JONATHAN WARDEN *et al.*, Respondents, v. MICHAEL
RYAN, Appellant.

St. Louis Court of Appeals, November 5, 1889.

1. **Principal and Surety.** If a contract be altered by the principal
　　without the consent of the surety, so as to destroy its identity, the
　　surety is discharged, and whether the alteration was for his benefit
　　is immaterial.

2. ————. The new agreement being executed and binding, the fact
　　that the original contract was in writing, and that it was changed
　　without the consent of the principal, so as to make it conform to the
　　new agreement, is immaterial.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Valle Reyburn*, for the appellant.

The defense upon which defendant relies, and which arises out of the conceded state of facts in this case, is the change in the building contract after the execution of the bond, without assent on his part, by increasing the consideration to be paid the contractors, the principals in the obligation. A material and subsequent modification of the contract for which the bond is indemnity discharges the surety. The rule discharging the surety does not spring from, nor is it affected by, any consideration, whether the modification is for the interest or to the detriment of the surety, but is founded on the doctrine that a surety, having pledged himself to the due fulfillment of a given contract, cannot be called upon to respond to a breach of a subsequent and different contract. Lloyd on Building and Buildings, sec. 69; Brandt on Suretyship, sec. 338; *Miller v. Stewart*, 4 Washington Circuit Court Reports, page 26, especially page 28 (affirmed on appeal in 9 Wheaton, p. 681); *Blair v. Ins. Co.*, 10 Mo. 566.

*Taylor & Pollard*, for the respondents.

The spoliation of a written instrument by a stranger does not invalidate it. *Medlin v. Platte Co.*, 8 Mo. 239; *Lubbering v. Kohlbrecher*, 22 Mo. 596; *Moore v. Ivers*, 83 Mo. 29; *Bridges v. Winter*, 42 Miss. 143; *Gordon v. Robertson*, 48 Wis. 493; 1 Greenleaf on Evidence, 566; *Nichols v. Johnson*, 10 Conn. 197. Again, an alteration or spoliation of a written instrument by an agent or custodian of it, when the alteration is not made by the consent of the owner, does not invalidate the instrument. *Lubbering v. Kohlbrecher*, *supra; Hagland v. Stephen*, 35 Conn. 521; *Van Brunt v. Eoff*, 35 Barb. 501; *Hunt v. Gray*, 35 N. J. L. 227. There was no ratification of the alteration. *Windsor v. Bank*, 18 Mo. App. 665; *Middleton v. Railroad*, 62 Mo. 579; *Cravens v. Gillion*, 63 Mo. 28; *Anderson v. Volmer*, 83 Mo. 406.

ROMBAUER, P. J., delivered the opinion of the court.

The liability of a surety depends on the identity of the contract and its *strictissimi juris*. If the contract between the principals be altered without his consent, so as to destroy its identity, he is discharged, and it is immaterial whether the alteration be for his benefit or not, because he has a right to stand upon the very terms of his agreement. This proposition is so firmly imbedded in the law of principal and surety that no considerations of apparent equity are permitted to disturb it, however great the hardships may be which, in individual cases, appeal for a modification of the rule. The unquestioned law, thus stated, we are called upon to apply to the undisputed facts of this case.

The plaintiffs entered into a written contract with Francisco and Sanguinet for the erection by the latter of a building at an agreed sum of fifty-five hundred and sixty dollars to be paid in certain installments. The defendant became the surety of the builders, and bound himself to the faithful performance of the contract by them, and to their delivery of the building, discharged from all claims, liens and charges, within a specified time. The building was not delivered within that time, nor was it delivered free from lien claims. The plaintiffs were compelled to pay, and did pay, these claims, and thereupon brought the present action against the defendant surety, who interposed the defense, that the original contract had been altered so as to increase the consideration to be paid by the plaintiffs to his principals for the erection of the building; that thereby a new contract was substituted for the one, for the performance of which he had become surety; all of which was done without his consent.

It appeared from the plaintiffs' evidence that, within two days after the contract was signed, Sanguinet, one

of the contractors, accompanied by the plaintiffs' architect, called upon the plaintiffs and stated that a clerical error had been made in footing up accounts, and that they could not complete the building unless the error amounting to six hundred and fifty-nine dollars and fifty cents was rectified. The plaintiffs then agreed to pay the contractors this additional amount of six hundred and fifty-nine dollars and fifty cents, making the contract price six thousand two hundred and nineteen dollars. That this was the transaction, admits of no doubt. In answer to the question, what did you agree to pay them, one of the plaintiffs says: "What the amount would be when the contract was footed up correctly, six thousand two hundred and nineteen dollars." The other plaintiff says: "They said they could not erect the building for that, and that they had made a mistake in footing up their account; so we told them to go ahead, and put that building up and we would give them six hundred dollars in addition."

The architect took the written contracts which had been executed in duplicate, and changed them by inserting sixty-two hundred and nineteen dollars and fifty cents as the consideration to be paid, and by striking out fifty-five hundred and sixty dollars, and by making corresponding changes in the installments. This he did without express authority from plaintiffs and without their knowledge. The payments of the various installments were subsequently made by the plaintiffs in conformity with the figures inserted by the architect. There was no evidence that the defendant knew of this new agreement or assented thereto.

All these facts appearing in the plaintiffs' evidence, the defendant at the close of plaintiffs' case requested the court to instruct the jury that the plaintiffs could not recover, which instruction the court refused.

The learned counsel for plaintiffs, aware of the danger of the situation, labors exhaustively to show

that the alteration of the written contract by the architect was unauthorized, and that the liability of the parties, as dependent on that instrument, was not changed, notwithstanding such alteration or spoliation. But that argument loses sight of the real question at issue, whether the work by the contractors was done under the contract stated in that instrument, or under a contract subsequently made of which the written instrument formed only part. There was nothing to prevent the principals from making a new contract for themselves, although they could make none for the defendant without his consent, and if the legal result of the plaintiffs' act is equivalent to the making of a new contract, the mere fact that they had no such intention is immaterial; nor could it be said that the new contract was not supported by any consideration, because it was supported by the consideration of sixty-two hundred and nineteen dollars and fifty cents to be paid on one side, and of the building of the house for that sum on the other. That the contract thus made is not identical with the contract on which the defendant became surety, is evident, and the surety's liability depends on the identity of the contract.

An attempt was made by plaintiffs' counsel to show that this additional six hundred and fifty-nine dollars and fifty cents was a mere gratuity or *bonus*, and an instruction was asked on that theory. There is nothing in the evidence to support that view, or to authorize the jury to draw that inference legitimately from anything in the plaintiffs' evidence. Whether it was a gratuity depends not on the fact how the plaintiffs' viewed it in their own minds, but whether, under the uncontroverted facts, they were under a legal obligation to pay it, after they agreed to pay it. The contractors insisted on an agreement for the payment of this additional amount, owing to a mistake in the original bid, and as a condition precedent to their entering upon the

performance of the contract on their part. It was optional with the plaintiffs to accede to this demand, or else hold the contractors to their original agreement, but when they acceded to the demand and agreed to pay a new consideration, they necessarily entered into a new contract. The architect by inserting this new consideration into the contract only expressed the true intention of the parties, even though, the act of insertion was unauthorized. It might with equal propriety be said that if, upon a similar demand made by plaintiffs, the consideration would have been reduced instead of being increased, it would have been a gift from the contractors to the plaintiffs in no way affecting the liability of the surety.

These considerations necessarily lead to the conclusion, that the court erred in not instructing the jury, at the close of the plaintiffs' evidence, that, upon the case made, the plaintiffs could not recover; and further erred in submitting to the jury the question whether the additional consideration agreed to be paid by plaintiffs was a mere gratuity. We find no errors in other parts of the record, but for these errors we are bound to reverse the judgment, notwithstanding the seeming hardship of the case.

Judgment reversed and cause remanded. All the judges concur.